IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| | * | |
| | * | |
| | * | |
| IN RE: GNC CORP. TRIFLEX | * | |
| PRODUCTS MARKETING AND SALES | * | MDL No. 14-2491-JFM |
| PRACTICES LITIGATION (NO. II) | * | |
| | * | |
| This document relates to: | * | |
| | * | |
| No. 14-120 | * | |
| No. 14-122 | * | |
| No. 14-123 | * | |
| No. 14-2 | * | |
| No. 14-33 | * | |
| No. 14-465 | * | |
| | * | |
| | * | |
| | ****** | |

**<u>MEMORANDUM</u>**

After their separate, putative class actions were transferred to this court pursuant to 28 U.S.C. § 1407, eight named plaintiffs—specifically, Michael Lerma, Jeremy Gaatz, Robert Toback, Robert Calvert, Sean Howard, Thomas Flowers, John Gross and Justin George—filed a consolidated amended complaint (CAC) against General Nutrition Corporation and GNC Holdings, Inc. ("GNC") and Rite Aid Corporation ("Rite Aid"), alleging violations of an array of consumer protection, deceptive practices and/or express warranty statutes in California, Illinois, Florida, New York, New Jersey, Pennsylvania and Ohio.[1] (*See* ECF No. 20). GNC and Rite Aid

---

[1] The GNC plaintiffs—Lerma, Gaatz, Toback, Howard and Calvert—bring Counts I through VIII in the CAC; plaintiffs Flowers, George and Gross bring Counts IX through XIII against Rite Aid. Specifically, Lerma brings Counts II and III on behalf of himself and a California-based class under California's Unfair Competition Law (UCL) and Consumers Legal Remedies Act (CLRA); Gaatz brings Count IV on behalf of a class of Illinois consumers, under the Illinois Consumer Fraud and Deceptive Practices Act (ICFA); Toback brings Count V on behalf of Florida consumers for violations of Florida's Deceptive and Unfair Trade Practices Act

now move to dismiss the CAC. (ECF No. 57). For the reasons set forth below, the motion will be granted.

## BACKGROUND

GNC manufactures a line of dietary supplements under the brand name "TriFlex." The TriFlex products come in four varieties: TriFlex, TriFlex Fast-Acting, TriFlex Sport and TriFlex Complete Vitapak. Although these four iterations differ slightly in their total combination of ingredients and individual goals, the products share the same primary active ingredients: glucosamine hydrochloride and chondroitin sulfate.

According to its advertising and product labels, the TriFlex brand improves the health, comfort, and function of joints and in some instances, may help regenerate cartilage. The labels for each product make this point in their own way: TriFlex "promotes joint mobility and flexibility"; TriFlex Fast-Acting and TriFlex Sport "cushion[]" joints while the latter also protects them from the "wear and tear of exercise." (ECF No. 20 at 11–12) . In addition to lubricating joints, TriFlex Complete Vitapak rebuilds cartilage and "supports [a] natural anti-inflammatory response." (*Id.* at 12). Despite these assurances—and despite advertising TriFlex Fast-Acting as "clinical strength" with an impact confirmed by "scientific research"—the TriFlex labels expressly disclaim any ability to "diagnose, treat, cure, or prevent any disease." (*Id.* at 14; ECF No. 57-2 at 5).

---

(FDUTPA); Howard brings Count VI and VII on behalf of New York consumers pursuant to Section 349 of the New York General Business Act; and Calvert brings Count VIII under Ohio's Breach of Express Warranty statute on behalf of a class of Ohio consumers. On behalf of a class of Rite Aid's California consumers, Flowers brings Counts X and XI alleging violations of the UCL and CLRA; Gross alleges violations of the New Jersey Consumer Fraud Act (NJCFA) on behalf of New Jersey consumers in Count XII; and George brings Count XIII on behalf of Pennsylvania consumers under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL). (*See* ECF No. 20)

In addition to TriFlex, GNC manufactures a line of similar products for Rite Aid, which Rite Aid markets and sells under its own brand name. These products include: Rite Aid Glucosamine/Chondroitin; Rite Aid Natural Glucosamine/Chondroitin; Rite Aid Glucosamine/Chondroitin, Triple Strength + MSM; RiteAid Glucosamine/Chondroitin + MSM; Rite Aid Glucosamine/Chondroitin Advanced Complex with HA. Like their GNC counterparts, the Rite Aid supplements purport to improve the health, comfort and function of joints.

The root of joint pain and discomfort is well known. People experience joint pain—along with basic swelling and stiffness—when the cartilage that protects and cushions bones becomes damaged or deteriorated. Cartilage is made of several components, including variants of glucosamine and chondroitin. As a result, companies such as GNC and Rite Aid manufacture and market digestible glucosamine and chondroitin supplements, in the hopes that orally ingesting some of the individual components of cartilage will improve the function of the body's joints. In response to this growing market, researchers have conducted an array of medical studies to test the efficacy of these pills.

According to plaintiffs, the "vast weight" of the evidence supports a single conclusion: glucosamine and chondroitin, ingested orally, does little to improve joint discomfort or to treat the symptoms of deteriorating cartilage. (Compl. ¶ 50). Specifically, in twelve studies released between 2004 and 2013, researchers concluded that (1) glucosamine and chondroitin users failed to experience improved symptoms of osteoarthritis of the knee, hip or lower back, and (2) glucosamine and choindroitin—alone or in combination—performed no better than a placebo. (*Id.* ¶¶ 38–47). More than one of these clinical trials also rejected the idea that glucosamine and chondroitin can regenerate cartilage or prevent further damage. (*Id.* ¶ 42). Furthermore, although the majority of these studies involved patients with osteoarthritis, the CAC maintains that

"experts in the field" nevertheless consider this research to be an appropriate proxy for measuring the ability of glucosamine and chondroitin to improve joint performance in nonarthritic users.  (*Id.* ¶ 7 n.5).

Apparently unaware of these uninspiring results, the plaintiffs purchased bottles of glucosamine and chondroitin-based products manufactured, distributed and sold by GNC and Rite Aid.  In each case, plaintiffs purchased the products after reading the labels' representations regarding the supplements' purported benefits for joints and cartilage.

The GNC plaintiffs include Lerma, Gaatz, Toback, Calvert and Howard.  Lerma, a California resident, purchased TriFlex Fast-Acting in California in 2012.  Gaatz, an Illinois resident, purchased TriFlex Sport in Illinois in 2013.  Toback, a Florida resident, purchased TriFlex Complete Vitapak in Florida in 2013.  Howard, a resident of New York, purchased TriFlex Fast-Acting in New York in 2013.  The Rite Aid plaintiffs include Flowers, Gross and George.  Flowers, a California resident, purchased some unidentified Rite Aid products in 2009; Gross, a New Jersey resident, purchased an unidentified Rite Aid product in New Jersey in 2011 and 2012; and George, a Pennsylvania resident, purchased Rite Aid Natural Glucosamine/Chondroitin in Pittsburgh in 2013.  (ECF No. 32 at 13).

Unhappy with their purchases, plaintiffs each filed suit against GNC and/or Rite Aid under their states' applicable consumer protection, deceptive advertising, or express warranty statutes.  Because plaintiffs allege that the labels for the GNC and Rite Aid products consistently communicated to consumers the idea that the supplements would reduce pain and promote joint performance, plaintiffs maintain that GNC and Rite Aid violated numerous state consumer protection laws with their allegedly false or deceptive advertising.

**STANDARD**

The purpose of Rule 12(b)(6) is to test the sufficiency of the plaintiffs' complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). At the same time, "[e]ven though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

As a result, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, to withstand a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). In setting forth the "grounds of [their] entitlement to relief," plaintiffs therefore must offer more than "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and alterations omitted) (quoting *Twombly*, 550 U.S at 555, 557)). It is not enough that the well-pled facts create "the mere possibility of misconduct"—a complaint must instead "state a claim to relief that is plausible on its face," so as to permit the court to draw "the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* at 678, 679 (internal quotation marks and alterations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations and alterations omitted). In those instances, "the complaint has alleged—but [] has not shown—that the pleader is entitled to relief," and dismissal under 12(b)(6) is appropriate. *Id.* at 679 (internal quotations and alternations omitted) (citing Fed. Rule. Civ. Proc. 8(a)(2)).

## ANALYSIS

As stated above, plaintiffs allege that in twelve studies released between 2004 and 2013, researchers concluded that glucosomine and chondroitin, taken alone or in combination, perform no better than a placebo in treating the symptoms of osteoarthritis of the knee, hip, or lower back. Further, plaintiffs allege that "experts in the field" consider these studies to be an effective proxy for measuring the ability of glucosomine and chondroitin to improve the health and performance of joints in non-arthritic consumers. (Compl. ¶ 7 n.5). Based upon these allegations, plaintiffs allege that the "vast weight" of the evidence supports a single conclusion: glucosomine and chondroitin taken orally, have little to no effect on the symptoms and discomfort associated with deteriorating joints. (*See id*. ¶ 50).

Under the "plausibility" standard established by *Iqbal* and *Twombly*, there is a fatal flaw in the allegations in the CAC. *See generally Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544. The studies cited by plaintiffs may well be sufficient to support their conclusory allegation concerning the "vast weight" of the evidence. However, in order for the advertisements of defendants to be false or deceptive, to constitute an unfair trade practice, or otherwise to violate the relevant consumer protection laws as to non-arthritic consumers—such as the named plaintiffs—plaintiffs must rely upon their allegation that "experts in the field" consider the

6

studies to be a valid proxy for measuring the effectiveness of glucosomine and chondroitin in non-arthritic users.  Although undoubtedly plaintiffs' experts will testify to a reasonable degree of medical certainty, there is no allegation that their views regarding the existing studies' ability to serve as a "proxy" is anything more than their own professional opinions.  Notably, the CAC does not allege that "experts in the field" are prepared to testify that, on the basis of the existing scientific evidence, any reasonable expert would conclude from the cited studies that glucosomine and chondroitin are ineffective in non-arthritic consumers.  Likewise, there is no allegation that the clinical trial relied upon by defendants: (1) does not exist at all, (2) exists but does not support any of GNC's representations about TriFlex, or (3) exists and supports the assertions on TriFlex Fast-Acting's bottle, but was not conducted in an appropriately scientific manner.

Against this background, the mere existence of a "battle of the experts" on the issue of glucosomine and chondroitin's effect on non-arthritic consumers is not sufficient to establish that defendants' advertisements violate the state consumer protection statutes in this case. Disagreements between experts, even under the "reasonable degree of scientific certainty" standard, are to be expected.  In my judgment, however, the fact that one set of experts may disagree with the opinions expressed by other qualified experts does not *ipso facto* establish any violation of the applicable consumer protection laws.  If there are experts who support what defendants say in their advertisements, the advertisements are not false and misleading, an unfair trade practice, or otherwise violative of the consumer protection statutes, unless the clinical trial relied upon by defendants was itself false and/or deceptive.[2]

---

[2] I have considered whether the issue is one of burden of proof, and I have concluded that it is not. Rather, the basis of my holding lies in the nature of the claims asserted by plaintiffs that rely upon the falsity, deceptiveness, or unfairness of defendants' advertisements.  In contrast, for

I will therefore grant defendants' motion to dismiss the CAC. I will, however, grant plaintiffs leave to file an amended CAC if they can do so in accordance with Fed. R. Civ. P. 11. It may be that the "experts in the field" mentioned by plaintiffs in the CAC cannot testify that, on the basis of the existing scientific evidence, any reasonable expert would conclude from the cited studies that glucosomine and chondroitin do not improve joint health in non-arthritic consumers. In that event, an amended CAC should not be filed, and the issue of the sufficiency of the present allegations will be properly framed for appellate review.[3]

In light of my holding that plaintiffs have not alleged sufficient facts to state any viable claim, I need not reach defendants' arguments that plaintiffs lack standing to assert either: claims for products whose labels they did not read or claims under the laws of states other than the states in which they made their purchase. Although defendants may well be correct, I am inclined to defer ruling on the standing issue until the class certification stage of the litigation. Further, although defendants may be correct about the viability of plaintiffs' "omission" claims, I likewise am inclined to defer ruling on that issue until a later stage of the litigation.

A separate order effecting the ruling made in this memorandum is being entered herewith.

---

example, in a product liability case in which a plaintiff must establish that a product is defective, it would be entirely appropriate for the jury to decide the defect issue on the basis of expert testimony that, to a reasonable degree of scientific certainty, a product is defective.

[3] My ruling is based upon the adequacy of plaintiffs' pleading. That ruling, however, is itself based upon what I believe is necessary to state claims under state consumer protection statutes. Ultimately, this is a state law question. Accordingly, the Fourth Circuit might want to consider certifying the question to the highest courts of the states whose statutes are relied upon by plaintiffs.

Date:   June 20, 2014            ____/s/_____
                                 J. Frederick Motz
                                 United States District Judge